UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA TRAYLING,

             Plaintiff,                                   Case No. 1:11-cv-787

v.                                               HON. JANET T. NEFF

ST. JOSEPH COUNTY EMPLOYERS
CHAPTER OF LOCAL #2955, AN
AFFILIATE OF COUNCIL 25, AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYERS INTERNATIONAL
UNION, AFL-CIO, and COUNTY OF
ST. JOSEPH,

             Defendants.

_____/

## OPINION

      Plaintiff Anita Trayling filed this discrimination case against Defendant County of St. Joseph (the county), her former employer; and Defendant St. Joseph County Employers Chapter of Local #2955, an affiliate of Council 25, American Federation of State, County and Municipal Employers International Union, AFL-CIO (AFSCME), the collective bargaining agent for county employees. Now pending before the Court are the parties' cross-motions for partial summary judgment (Dkts 50, 56 & 57), which concern the viability of Plaintiff's retaliation claim in Count I and her argument that the election-of-remedies provision within the collective bargaining contract between the county and AFSCME is both per se retaliatory and unlawful under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

Having conducted a Pre-Motion Conference in this matter and having now fully considered the parties' written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).  For the reasons that follow, the Court determines that the election-of-remedies provision is retaliatory per se under the ADA and ADEA and therefore concludes that Plaintiff's motion is properly granted and Defendants' cross-motions are properly denied.

## I. BACKGROUND

Before November 9, 2009, Plaintiff worked for the county as an appraiser in the Equalization Department (Statement of Material Facts [SMF][1] at 5).  She was then a member in good standing of AFSCME (*id.*).  On November 9, 2009, the county provided her a letter indicating that her position would be eliminated and that she would be laid off (*id.*).  On November 18, 2009,[2] the county provided Plaintiff written notice that, pursuant to the collective bargaining contract between AFSCME and the county, she had seven days to exercise her bumping rights (*id.*).

On November 25, 2009, Plaintiff provided a letter to the St. Joseph County Prosecuting Attorney indicating her desire to bump to a senior court liaison secretary position (SMF at 5).  On December 1, 2009, Plaintiff began her trial period for that position (*id.*).  On December 17, 2009,

---

[1]Unless otherwise noted, the Court has cited to the material facts stated by Plaintiff (Dkt 51 at 5-7), to which Defendants stipulated (Dkt 56 at 5; Dkt 58 at 5).

[2]Although Plaintiff's statement of material facts indicate that the notice was provided on "November 18, 2008" (Dkt 51 at 5), the notice attached as Exhibit 1 and the context of the other factual statements clearly establish that the notice was provided on November 18, 2009.

the prosecutor advised Plaintiff that he was exercising his right under the contract to return her to layoff status, thereby ending her employment with the county (*id.*).

Plaintiff thereafter in December 2009 filed a grievance regarding her layoff through AFSCME (SMF at 6). The grievance was denied, and she appealed the denial of the grievance through AFSCME (*id.*).

On or about January 19, 2010, Plaintiff also filed a charge of discrimination with the Michigan Department of Civil Rights against the county (SMF at 6). In the charge, Plaintiff alleged that Defendant County of St. Joseph laid her off because of her age and her disability in violation of the ADEA and the ADA (*id.*).  Plaintiff requested that her charge also be filed with the Equal Employment Opportunity Commission (EEOC) (*id.*).

The collective bargaining contract between Defendants contains Article VII, Section 10, which provides the following:

> Section 10.  Election of Remedies. When remedies are available for any complaint and/or grievance of an employee through any administrative or statutory scheme or procedure, such as, but not limited to, a veteran's preference hearing, civil rights hearing, or Department of Labor hearing, in addition to the grievance procedure provided under this contract, and the employee elects to utilize the statutory or administrative remedy, the Union and the affected employee shall not process the complaint through any grievance procedure provided for in this contract beyond Step 2.  The employee must make his/her election within five (5) working days after the Step 2 answer is received.  If an employee elects to use the grievance procedure provided for in this contract and, subsequently, elects to utilize the statutory or administrative remedies, then the grievance procedure provided for hereunder shall not be applicable and any relief granted shall be forfeited.

(*id.*).  The county allowed Plaintiff's grievance to continue through Step 2, but it refused to process the grievance any further, stating its reasons in a letter to AFSCME Staff Representative Jerome Buchanan (*id.*).  Among the reasons were that "Article VII, Grievance Procedure, Section 10,

Election of Remedies, bars the grievance from continuing based on the Grievant's filing of the EEOC charge" (*id.* at 6-7).

The parties agree that upon receipt of the county's response, Buchanan contacted Plaintiff and advised her of her options to either elect to pursue the grievance or continue with the EEOC charge (SMF at 7).  On or about March 8, 2010, in an e-mail message thanking him for his work with respect to her grievance, Plaintiff indicated to Buchanan that she would no "longer be seeking union representation in this matter" and was executing her "right to far [sic] and lawful employment against St. Joseph County through the U.S. Equal Employment Opportunity Commission" (*id.*). Plaintiff filed separate charges of retaliation with the Michigan Department of Civil Rights against the county and AFSCME regarding the compelled election (*id.*).  In these charges, Plaintiff asked that these charges also be filed with the EEOC (*id.*).  The EEOC eventually issued reasonable cause determinations and right-to-sue letters against the county and AFSCME regarding her retaliation charges (*id.*).

On July 28, 2011, Plaintiff initiated this lawsuit, alleging a retaliation claim against both Defendants under the ADA and ADEA (Dkt 1).  On February 17, 2012, Plaintiff filed a First Amended Complaint (Dkt 27), adding Michigan's Elliot-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MICH. COMP. LAWS § 37.1101 *et seq.*, as additional statutory bases for her retaliation claim (Count I).  Plaintiff also added two state-law claims against the county only:  age discrimination (Count II) and disability discrimination (Count III).  The Court conducted a Pre-Motion Conference with counsel in June 2012 concerning the parties' proposed dispositive

motions on Count I, the common retaliation claim on which they seek partial summary judgment. The parties subsequently filed their motion papers (Dkts 50-57).

## II.  ANALYSIS

### A.  Standard of Review

A party may move for partial summary judgment, identifying the part of each claim on which summary judgment is sought.  FED. R. CIV. P. 56(a).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989).  Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008).  The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.*  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.  Discussion

The parties' cross-motions concern whether the election-of-remedies provision violates the ADEA and ADA,[3] either as a facial violation of those statutes' anti-retaliation provisions or under

---

[3]Although Plaintiff identifies four anti-retaliation provisions as statutory bases for Count I in her First Amended Complaint, Plaintiff indicates in her brief in support of her Motion for Partial Summary Judgment that she is requesting that this Court decide whether the election-of-remedies provision is "per se retaliatory and unlawful" under only the ADEA and the ADA (Dkt 51 at 5).

the conventional burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 782 (1973).  Plaintiff devotes the majority of her brief to her argument that the election-of-remedies provision constitutes a per se violation of the anti-retaliation provisions of the ADEA and ADA, and the Court finds that argument outcome-determinative in Plaintiff's favor, for the reasons that follow.

The ADEA's anti-retaliation provision, § 4(d), provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).  The ADA's anti-retaliation provision similarly provides that "[n]o person shall discriminate against any individual . . . because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

According to Plaintiff, the election-of-remedies provision in this case is per se retaliatory as, contrary to the statutory goals, the provision serves as a disincentive to older and disabled workers to vindicate their rights under the ADEA and ADA (Dkt 51 at 9-10).  Relying primarily on a decision of the Seventh Circuit Court of Appeals, *EEOC v. Bd. of Governors of State Colls. & Univs.*, 957 F.2d 424 (7th Cir.), cert. den. 506 U.S. 906 (1992), Plaintiff argues that the election-of-remedies provision in this case constitutes a powerful disincentive to an employee seeking to make or support a charge of discrimination where (1) the "election of remedies" provided for in the provision at bar is not a true election for the employee inasmuch as the union ultimately decides whether to pursue a grievance to arbitration, even at the risk of the expiration of the 180- or 300-day process for filing a discrimination charge with an administrative agency; (2) the grievance/arbitration procedure does not give an employee the remedies available under the ADEA

or ADA, such as liquidated damages and punitive damages, respectively, and a jury trial; and (3) a party in a grievance has an opportunity to pursue a claim—that she was dismissed without good cause—that the party cannot pursue through the EEOC and beyond in court (*id.* at 11-16).

In response, AFSCME argues that the rights to proceed to arbitration or file a court action are matters within the exclusive domain of the collective bargaining process.  AFSCME argues that the election-of-remedies provision in this case is not retaliatory merely because AFSCME relinquishes its interest in a grievance that is the subject of a duplicative proceeding.  AFSCME argues that a case from the Second Circuit Court of Appeals, *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114 (2d Cir. 2008), cert. den. 558 U.S. 932 (2009), supports the conclusion that the election-of-remedies provision is instead a "reasonable defensive measure" to avoid duplicative proceedings in two different forums (Dkt 56 at 9-10).  Moreover, AFSCME asserts that the election-of-remedies provision in this case, which contains strict time lines relating to each step, does not risk expiration of the 180- or 300-day process for filing with an administrative agency or otherwise undermine public policy (*id.* at 15-16).  The county joins in AFSCME's arguments in support of partial summary judgment entered in Defendants' favor (Dkt 57).

Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has squarely addressed whether an election-of-remedies provision like the one in this case constitutes a per se violation of the anti-retaliation provisions of the ADEA or ADA.  The Seventh and Second Circuit Court of Appeals cases upon which the parties rely, *Board of Governors* and *Richardson*, provide two different analyses of the question, the strength of which the Court will consider in turn.

1. ***Board of Governors***

First, in *Board of Governors*, the ADA case upon which Plaintiff relies, the Seventh Circuit examined an election-of-remedies provision that provided that "[i]f prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative or judicial, the Board or any University shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure." 957 F.2d at 426. As a threshold matter, the Seventh Circuit emphasized that the focus of the anti-retaliation provision is "the effect of discrimination against employees who pursue their federal rights, not the motivation of the employer who discriminates." *Id.* at 427-29 (citing *Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect"), and *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129 (1985) (holding that the defendant's transfer policy violated the ADEA even though the defendant "acted reasonably and in good faith")).[4] Hence, the Seventh Circuit explained that the employer's motivation for including the election-of-remedies provision—avoiding duplicative litigation—was merely a justification for its retaliation, and did not operate to rebut the claim that the employer discriminated against employees who engaged in protected activity. *Id.* at 428.

The Seventh Circuit also opined that it was "immaterial" that an employee might have overlapping contractual and legal remedies. *Board of Governors*, 957 F.2d at 428 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974) (holding that an individual does not forfeit a private

---

[4]The Seventh Circuit in *Board of Governors*, an ADA case, noted that an employee also enjoys statutory protection against retaliation when filing discrimination claims under Title VII, *see* 42 U.S.C. § 2000e-3(a). 957 F.2d at 430 n.9.

cause of action under Title VII "if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement")).

On the crux of the issue before it, whether the election-of-remedies provision constituted a per se violation of the anti-retaliation provision, the Seventh Circuit decided that the provision was retaliatory per se because the employee's participation in the statutorily protected activity (pursuing her legal remedies) is the determining factor in the employer's decision to take adverse employment action (the termination of the contractual remedy). *Bd. of Governors*, 957 F.2d at 428-29. The employer argued that the termination of the grievance process was "non-problematic" and could not constitute an adverse employment action "because the employer had no obligation to provide its employees with a right to grievance procedures at all," but the Seventh Circuit rejected this argument, emphasizing that the employer, once having decided to provide grievance proceedings, could not thereafter provide them only to employees who refrained from participating in statutorily protected activities. *Id.* at 430 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) ("A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all.")).

Last, the Seventh Circuit determined that the fact that an employer can deny grievance proceedings on the basis of participation in unprotected activity was "entirely irrelevant." *Bd. of Governors*, 957 F.2d at 430. The Seventh Circuit reasoned that a policy is discriminatory when it discriminates against members of a protected class on the basis of an impermissible factor, and the fact that the scope of the policy is broadened to also include members of unprotected classes does not make the policy any less discriminatory. *Id.* (citing *Trans World Airlines*, 469 U.S. at 124). The

Seventh Circuit opined that were it to reach a contrary conclusion, then "employers could consistently employ discriminatory criteria as long as they were careful to draw their discriminatory lines broadly enough to include members of a non-protected class." *Id.* at 431.

Plaintiff acknowledges that *Board of Governors,* a Seventh Circuit decision, does not control this Court's decision, but Plaintiff contends that the Sixth Circuit has lent support to the Seventh Circuit's reasoning in *EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490 (6th Cir. 2006) (Dkt 51 at 14). *SunDance* involved a Separation Agreement that conditioned severance pay on promises from the terminated employee not to file charges with the EEOC. Hence, the *SunDance* panel found *Board of Governors* "factually distinguishable and inapplicable" to the precise issue before it. 466 F.3d at 500-01 (ultimately concluding that the mere *offer* of the separation agreement to all employees terminated in the reduction in force, without more, did not amount to facial retaliation under the statutes at issue).

However, the Court agrees with Plaintiff that *SunDance* is helpful in indicating the Sixth Circuit's direction on this issue inasmuch as the *SunDance* panel, in summarizing the facts of *Board of Governors*, indicated that "the employer actually took an adverse action against the employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC" and further opined that "[t]hat action clearly constituted retaliation in violation of 29 U.S.C. § 623(d)." *SunDance*, 466 F.3d at 490. *See, e.g., Brinkley v. Bd. of Comm'rs of Franklin Cty., Ohio*, No. 2:12-cv-469, 2013 WL 394158, at *4-5 (S.D. Ohio, Jan. 29, 2013) (determining that the Sixth Circuit had "suggested approval" of the reasoning in *Board of Governors* and concluding that the plaintiff had, for purposes of obtaining a preliminary injunction enjoining the invocation of the election-of-remedies provision, demonstrated that she would likely succeed on her retaliation claim);

10

*cf. Wedding v. Univ. of Toledo*, 884 F. Supp. 253, 255 (N.D. Ohio 1995) (relying on *Board of Governors* to conclude that the collective bargaining agreement holding in abeyance grievance procedure during resolution of EEOC charges was retaliatory), rev'd on other grounds, 89 F.3d 316 (6th Cir. 1996).

2.      *Richardson*

Turning next to the Title VII case upon which Defendants rely, *Richardson,* the election-of-remedies provision at issue there provided that discrimination disputes "shall not be arbitrable if a complaint is filed with the Commission on Human Rights and Opportunities arising from the same common nucleus of operative fact." 532 F.3d at 118. The Second Circuit began its analysis by discussing an earlier decision, *United States v. N.Y. City Transit Auth. (N.Y.C. Transit)*, 97 F.3d 672 (2d Cir. 1996), where the Second Circuit had held, with no citation to authority, that "[r]easonable defensive measures do not violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee and result in differential treatment." *Id.* at 123 (quoting *N.Y.C. Transit*, 97 F.3d at 677)). The Second Circuit determined that Richardson had not persuasively distinguished her case from *N.Y.C. Transit* and that the election-of-remedies provision before it likewise "seems to qualify as 'reasonable defensive measure' utilized by Richardson's employer to litigate discrimination claims brought against it effectively and efficiently." *Id.* at 124.

The Second Circuit concluded that the election-of-remedies provision was not retaliatory per se but "a rather sensible outcome of the collective bargaining process"as "[i]t makes sense that an employer might not wish to 'retain legal counsel to deal with discrimination claims and take other steps reasonably designed to prepare for and assist in the defense' of a lawsuit while simultaneously preparing for an arbitration hearing on the same issue," and, similarly, that "a union might want to

11

deploy its scarce resources selectively." *Richardson*, 532 F.3d at 122-123 (quoting *N.Y.C. Transit, supra*). Additionally, the Second Circuit determined that adherence to the provision, which resulted in the union's withdrawal from arbitration of the Plaintiff's claim, did not constitute an adverse employment action but avoided "duplicative proceedings in the two fora maintained by the employer for adjudicating claims of discrimination without affecting a complainant's work, working conditions, or compensation." *Id.* at 123.

This Court, of course, is bound neither by *N.Y.C. Transit* nor *Richardson*. Further, the Second Circuit did not cite any authority for the reasonable-defensive-measure rationale upon which these two cases are premised that would bind this Court. This Court finds more convincing the Seventh Circuit's position, as supported by Supreme Court case law, that an employer's desire to avoid duplicative litigation may indeed be reasonable but nonetheless does not rebut the claim that the employer discriminated against employees who engaged in protected activity. *Bd. of Governors*, 957 F.2d at 428-29 (citing *Int'l Union*, 499 U.S. at 199; *Trans World Airlines*, 469 U.S. at 129).

Moreover, this case factually differs from *Richardson* in that the forums implicated by the election-of-remedies provisions are distinct, as are the claims asserted within each. The election-of-remedies provision in this case broadly targets employees who elect to utilize remedies available "for any complaint and/or grievance of an employee through any administrative or statutory scheme or procedure," whereas the election-of-remedies provision in *Richardson* more narrowly concerns discrimination disputes "arising from the same common nucleus of operative fact" as the employee's arbitration proceeding. Additionally, "*Richardson* presents a narrow situation in which the employer—Connecticut's equivalent to [the Oregon Bureau of Labor and Industries (BOLI)] and the EEOC—maintained both the internal, collectively bargained-for grievance procedure and the

12

external agency forum, each of which processed discrimination claims." *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 291 P.3d 658, 671 (Or. 2012) (attempting to reconcile the holdings in *Board of Governors* and *Richardson*). These factual differences only serve to further weaken Defendants' proposition to apply the Second Circuit's reasonable-defensive-measure rationale in this case.

Therefore, the Court agrees with Plaintiff that the case upon which she relies, *Board of Governors,* and the Seventh Circuit's reliance on United States Supreme Court precedent therein, represents the more cogent approach to analyzing the propriety of the election-of-remedies provision in this case. The Court is persuaded that like the election-of-remedies provision in *Board of Governors,* the election-of-remedies provision here is retaliatory per se because the employee's participation in the statutorily protected activity (pursuing her legal remedies) is the determining factor in the employer's decision to take the adverse employment action (the termination of the contractual remedy). *Compare N.Y.C. Transit*, 97 F.3d at 677 ("the difference in treatment between aggrieved employees who have exercised Title VII rights and those who have not is simply an effect of the employer's choice of defensive measures"), *with Portland*, 291 P.3d at 673 ("[t]he resulting harm is neither theoretical nor trivial, but qualifies as a substantive difference in treatment").

**3.** ***Naik* and *Grand Rapids***

Neither of the other two cases upon which Defendants rely compel a different conclusion in this case. The district court adopting the Report and Recommendation in *Naik v. Barnhart*, No. 1:05-cv-831, 2006 WL 3456671 (W.D. Mich. Nov. 30, 2006), was not examining a bargained-for election-of-remedies provision, nor was it faced with deciding whether mandating the employee to elect his remedies amounted to retaliation. *Naik* is factually inapposite inasmuch as federal

employees are subject to the Civil Service Reform Act, which provides that an "aggrieved employee" with discrimination claims "may raise the matter under a statutory procedure or the negotiated procedure, but not both," 5 U.S.C. § 7121(d).  *Id.* at *9*.  *See also* 29 C.F.R. § 1614.301(a) ("A person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise a matter under either part 1614 or the negotiated grievance procedure, but not both.").  As the Sixth Circuit explained, "[i]n permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)).

Defendants also point to the decision of the Michigan supreme court in *City of Grand Rapids v. Grand Rapids Lodge No. 97*, 330 N.W.2d 52, 53 (Mich. 1974), where the Michigan supreme court held that a union may properly relinquish its right to resolve a grievance by negotiation, opining that "just as [the union] can relinquish its right to further negotiation and proceed to arbitration, or file a court action, or (in the private sector) strike over the grievance, it can relinquish its right to further negotiation when the grievance becomes the subject of litigation." *Id.* at 55.

The Michigan supreme court likewise did not address the question before this Court, whether an election-of-remedies provision that precludes an employee from simultaneously pursuing her administrative and judicial remedies is per se retaliatory under the ADA and ADEA.  And the general proposition for which *Grand Rapids* stands, that an employer may both provide and relinquish employee benefits, is not in dispute.  *Cf. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (holding that a provision in a collective-bargaining agreement that clearly and unmistakably requires

14

union members to arbitrate ADEA claims is enforceable as a matter of federal law). The United States Supreme Court in *Hishon* similarly acknowledged that "[a]n employer may provide its employees with many benefits that it is under no obligation to furnish by any express or implied contract," but the Supreme Court advanced the analysis in ultimately holding that a benefit that is part and parcel of the employment relationship may "not be doled out in a discriminatory fashion." *Bd. of Governors*, 957 F.2d at 430 (quoting *Hishon*, 467 U.S. at 75); *see also SunDance*, 466 F.3d at 498 (quoting *Hishon*, 467 U.S. at 75-76). Defendants' attempt to minimize the employment benefit provided, stressing that the decision whether to pursue a grievance is in AFSCME's "sole discretion" (Dkt 56 at 12), is therefore unpersuasive. The pivotal fact is that the benefit, whatever its discretionary nature, was extended to employees but remains wholly unavailable to those employees who participate in the statutorily protected activity of pursuing their ADA or ADEA remedies.

Because the Court concludes that the election-of-remedies provision is retaliatory per se under the ADA and ADEA, the Court does not also examine whether Plaintiff can establish an individual-disparate-treatment claim under the burden-shifting method of *McDonnell Douglas*. As the Seventh Circuit explained in *Board of Governors*, 957 F.2d at 431, it would be "inappropriate" to suggest that each member of a protected class file an individual-disparate-treatment claim where the adverse employment action stems not from an individual decision, but from a discriminatory policy.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Dkt 50) is GRANTED, and Defendants' cross-motions (Dkts 56 & 57) are DENIED. An Order will be entered consistent with this Opinion. Further, a separate Order will issue at a later date to notice a Scheduling Conference pursuant to FED. R. CIV. P. 16.

DATED: June 19, 2013                    /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge